**IT IS ORDERED as set forth below:**



**Date: March 28, 2017**

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-82440-WLH |
| | ) | |
| JAMES GREGORY OSBOURNE, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |
| | ) | |
| THOMAS CONCRETE OF GEORGIA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. PROC. NO. 10-6621 |
| | ) | |
| JAMES GREGORY OSBOURNE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment on Counts I and III only of a complaint to determine the dischargeability of debt ("Plaintiff's Motion") [Docket No. 18] and Defendant's Motion for Summary Judgment on all counts of the complaint ("Defendant's Motion") [Docket No. 21]. As the issues presented are the

1

dischargeability of claims, this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

## UNDISPUTED FACTS[1]

Defendant James Gregory Osbourne ("Defendant") was the president of Osbourne & Associates, Inc. ("Osbourne & Associates"), a Georgia company that was engaged in the general contracting business in the Atlanta area. Osbourne & Associates served as the general contractor for two separate retail shopping center projects relevant to this adversary proceeding: The Shoppes at River Station, LLC ("River Station") and Panola Crossings, LLC ("Panola"). Osbourne & Associates hired Chadwick T. Wallace, Inc., a/k/a C.T.W., Inc. ("C.T.W.") as a subcontractor to provide concrete and related services for the River Station and Panola projects. C.T.W., in turn, hired Plaintiff Thomas Concrete of Georgia ("Plaintiff"), which is engaged in the business of providing ready mix concrete to various residential and commercial contractors. Between September 25, 2008 and June 9, 2009, Plaintiff supplied C.T.W. with materials used in the River Station and Panola projects. Osbourne & Associates never ordered supplies or materials directly from Plaintiff.

Osbourne & Associates received payments from the owners of the River Station and Panola projects. All revenues from River Station and Panola were deposited into the bank account for Osbourne & Associates, and such funds were used to pay obligations of the company. The funds were not deposited into Defendant's personal account and were not used to pay any personal obligations. C.T.W. invoiced Osbourne & Associates a total of $140,443.00 in connection with the River Station project. Osbourne & Associates paid C.T.W. a total of $126,398.34 for the project, leaving a balance of $14,044.27. C.T.W. also invoiced Osbourne &

---

[1] Defendant responded to Plaintiff's Statement of Material Facts, but Plaintiff did not respond to Defendant's Statement of Undisputed Facts. Pursuant to BLR 7056-1(a)(2), "All material facts contained in a movant's statement that are not specifically controverted in respondent's statement shall be deemed admitted."

Associates a total of $134,114.88 in connection with the Panola project, and Osbourne & Associates paid C.T.W. a total of $110,109.68 for the project, leaving a balance of $13,161.50. C.T.W. failed to pay Plaintiff from the funds paid by Osbourne & Associates to C.T.W. for the River Station and Panola projects.

On July 15, 2009, Defendant, as president of Osbourne & Associates, signed an "Affidavit of Osbourne & Associates, Inc. upon Final Payment" with respect to the Panola project. Defendant signed a similar affidavit on behalf of the River Station project on July 24, 2009. Each of the affidavits stated in part "that Osbourne & Associates, Inc. has paid in full or has otherwise satisfied all obligations to each contractor, sub-contractor, laborer and/or materialman for any amount for labor, services and/or materials used in erecting and/or repairing and/or remodeling the improvements now existing on said tract of land."

Notwithstanding the foregoing, Plaintiff asserts that C.T.W. did not pay all of its invoices and that it is owed a total of $104,572.91, together with interest, attorney's fees, court costs and expenses. As a result of the nonpayment, Plaintiff filed materialman's liens against the River Station and Panola projects. On August 5, 2009, Plaintiff recorded a Materialman's and Mechanic's Claim of Lien in the Superior Court of DeKalb County for the Panola project. On August 12, 2009, Plaintiff recorded a Materialman's and Mechanic's Claim of Lien in the Superior Court of Clayton County for the River Station project. After the filing of the materialman's liens, Plaintiff received communication from attorneys for the respective owners informing Plaintiff of the owner's intent to file suit against Plaintiff to have its lien declared invalid and to recover its attorney's fees and litigation expenses unless Plaintiff cancelled its lien of record immediately. The owners asserted that the contractor's affidavit signed by Defendant served to dissolve Plaintiff's claims of lien under Georgia law. After consulting with counsel,

Plaintiff cancelled the materialman's lien against the River Station project on February 8, 2010 and against the Panola project on November 2, 2010.

While the River Station and Panola projects where ongoing, Osbourne & Associates had between six and eight potential projects under negotiation. Due in part to the ongoing recession, none of the projects were realized. So, although Defendant believed in 2008 and 2009 that Osbourne & Associates would undertake new projects that would enable it to continue operating and pay any unpaid amounts related to the River Station and Panola projects, in fact, the company was unable to pay all its debts as they came due. Defendant, on behalf of Osbourne & Associates Company, consulted its attorney, William Hopson ("Hopson"). Defendant informed counsel that Osbourne & Associates could not pay its debts, but still needed to receive final payment on the River Station and Panola projects. Hopson, on behalf of Osbourne & Associates, negotiated with attorneys for the owners of River Station and Panola regarding the appropriate language for a final affidavit. Defendant specifically asked Hopson about the language in the affidavits stating that the company "has paid in full or otherwise satisfied all obligations to each contractor, sub-contractor, laborer and/or materialman for any labor, services and/or materials used in erecting and/or repairing and/or remodeling the improvements now existing on said tract of land." Defendant asked if he could sign such an affidavit and Hopson advised him that the phrase "otherwise satisfied" was accurate since a judgment against Osbourne & Associates by the suppliers would "otherwise satisfy" the obligations. Defendant then signed the affidavits.

## **CONCLUSIONS OF LAW**

*Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4

matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c).  "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The party moving for summary judgment has "the initial responsibility of informing the … court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (citing Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553). What is required of the moving party, however, varies depending on whether the moving party has the ultimate burden of proof on the issue at trial.

> When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim' (cites omitted) in order to discharge this 'initial responsibility'. Instead, the moving party simply may 'show – that is, point out to the … court – that there is an absence of evidence to support the nonmoving party's case. (cites omitted). Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

Four Parcels of Real Prop., 941 F.2d at 1437 (citing Celotex, 477 U.S. at 323-31, 106 S.Ct. at 2553-57).

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at

918. When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

The standard for the grant of summary judgment is not affected by the filing of cross-motions for summary judgment. "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A C. Wright et al., Fed. Prac. & Proc., § 2720 at 335-36 (3d ed. 1998). Cross-motions can, however, illuminate whether there is a factual dispute or where the parties generally agree as to the material facts or the controlling legal theories. See United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984); Strickland v. Alexander, 153 F.Supp. 3d 1397, 1404 (N.D. Ga. 2015).

Here, the burden is on the creditor seeking the exception to discharge to prove non-dischargeability by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 287-88 (1991); see also Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994). As a result, Plaintiff and Defendant have different burdens of proof in their respective motions. Plaintiff must present affirmative evidence in support of its motion. Defendant need not submit affidavits in support of his motion or response to Plaintiff's motion, but must direct the Court to the portions of the record that support his position. In response to Defendant's motion, Plaintiff is required to direct the court to evidence in the record indicating that a dispute exists in the facts material to its claims.

*The Existence of a Claim*

Under 11 U.S.C. § 523, the Bankruptcy Code provides that certain debts are nondischargeable. Section 523, however, does not establish an independent basis for a claim.

6

See Zacharakis v. Melo (In re Melo), 558 B.R. 521, 561 (Bankr. D. Mass. 2016); Walker v. Vanwinkle (In re Vanwinkle) 562 B.R. 671, 678 (Bankr. E.D. Ky. 2016). Rather,

> [d]ischargeability actions require a two-part analysis: first, the bankruptcy court must determine the validity of the debt under applicable law (the claim on the debt); and second, the bankruptcy court must determine the dischargeability of that debt under section 523 (the dischargeability claim).

Hatfield v. Thompson (In re Thompson), 555 B.R. 1, 8 (10th Cir. BAP 2016). The Bankruptcy Code defines "debt" as "liability on a claim" and "claim" as "a right to payment". 11 U.S.C. §§ 101(12) and (5)(A). Whether a claim or debt exists is based on state law or applicable federal law other than the Bankruptcy Code. See Thompson, 555 B.R. at 8; Vanwinkle, 562 B.R. at 677.

Plaintiff, in its complaint, does not allege any state law cause of action against Defendant or any causes of action against Defendant under federal law other than Section 523. In fact, Plaintiff alleges that Defendant has "violated" Section 523 and that Plaintiff is entitled to a judgment in a certain monetary amount because it contends Defendant committed actual fraud. The complaint alleges that Defendant violated a duty to Plaintiff. The nature and origin of that duty is not pled.

In the motion for summary judgment, Plaintiff again asserts that it is entitled to a judgment under Section 523(a)(2) under the general law of fraud. Plaintiff asserts that Defendant's execution of an allegedly false affidavit was fraudulent and caused Plaintiff to dismiss and cancel its claims of lien on the River Station and Panola projects. Plaintiff asserts it is entitled to a judgment for the total amount unpaid to it for the delivery of concrete to the projects. The Court notes that, to the extent Plaintiff is attempting to allege a cause of action under Georgia law for fraud, the damages resulting from the fraud would not necessarily be the total amount due to the Plaintiff. Rather, the damage would be the value of the lost lien since that is the result of the alleged fraud. That value would depend on the value of the real property

7

at the time the lien was released and the amount and priority of other liens on the property. None of that information is provided to the Court.

Finally, the motion for summary judgment alleges that Defendant violated two criminal statutes. This Court, as a civil court, cannot adjudicate any alleged violation of a criminal statute and the allegation of a crime alone does not form a basis for civil recovery of damages. See Jastram v. Williams, 276 Ga. App. 475, 476 (2005).

Construing Plaintiff's complaint liberally and as a notice pleading, the Court will accept that Plaintiff has pled a claim for fraud, presumably under Georgia law. Nevertheless, because Plaintiff did not seek summary judgment under Georgia law and neither party briefed the Georgia law of fraud as it applies to these facts, the Court finds it to be improvident to move forward on the motion for summary judgment without the parties having adequate time to brief the issue.

*Claims of Non-Dischargeability under Section 523(a)(2)*

Plaintiff alleges Defendant obtained money or property by false pretenses, false representation or actual fraud when Defendant executed the contractor's affidavits that allegedly caused the liens against the River Street and Panola projects to be dissolved. Specifically, Plaintiff alleges the affidavits were knowingly false and Defendant executed them with the intent to prevent any liens from attaching to the projects. As a result of Defendant's fraud, Plaintiff argues, the debt from nonpayment should be nondischargeable under Section 523(a)(2)(A).

The Defendant argues that Plaintiff's claim under Section 523(a)(2)(A) must fail because, *inter alia*, Defendant had no intent to deceive Plaintiff and Plaintiff's debt was not for money, property, services, or an extension, renewal, or refinancing of credit obtained by fraud. The Supreme Court recently recognized the requirement that only a debt "obtained by" fraud is nondischargeable under Section 523(a)(2)(A) in Husky International Electronics, Inc. v. Ritz,

8

136 S. Ct. 1581 (2016). Though the decision is on whether a claim for actual fraud under Section 523(a)(2)(A) can encompass forms of fraud that can be effected without a false representation, id. at 1588-89, both the majority and the dissent addressed the "obtained by" language in the statute. In his dissent, Justice Thomas argued the phrase "obtained by" includes "an 'inherent' 'element of causation,' and refers to [] debts 'resulting from' or 'traceable to' fraud." Id. at 1591 (Thomas, J. dissenting). The majority disagreed, holding that the language of the statute does not require the debt to result from fraud at the inception of the transaction, and further stating that the kind of reliance being discussed by the dissent depends on the elements of the claim that gave rise to the debt in question. Id. at 1589 (thus recognizing the need for Plaintiff to establish the underlying claim). Accordingly, Plaintiff's supplemental briefing should include a discussion of what money, property, services, or extension, renewal, or refinancing of credit Defendant obtained by fraud, the value of such money, property, services or credit, and finally how it was "obtained by" fraud within the meaning of the statute.

*Claims of Non-Dischargeability under 11 U.S.C. § 523(a)(6)*

Section 523(a)(6) excepts from discharge any debt that results from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). As discussed above, however, this section can only apply once a debt arises because a claim has been established. Section 523(a)(6) does not create an independent cause of action for "willful and malicious injury". Thus, the Court cannot determine at this time whether any claim of Plaintiff may be subject to nondischargeability under 11 U.S.C. § 523(a)(6).

*Claims of Non-Dischargeability under Section 523(a)(4)*

Defendant moves for summary judgment on Count II, which seeks a determination that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). Plaintiff did not seek summary judgment on this count, or oppose Defendant's motion for summary judgement on this point.

9

Defendant argues that no fiduciary relationship existed and there is no evidence in the record to support a claim for embezzlement or larceny.  A fiduciary relationship under Section 523(a)(4) is to be construed narrowly.  Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993) (citation omitted). "Section 523(a)(4) requires that the debtor, acting as a fiduciary in accordance with an express or technical trust that existed prior to the wrongful act, committed an act of fraud or defalcation." Estate of Newton v. Lemmons (In re Lemmons), 2005 WL 6487216, at * 4 (Bankr. N.D. Ga. Dec. 20, 2005) (citation omitted).  A technical trust has been defined by the Eleventh Circuit as "an express trust created by statute or contract that imposes trust-like duties on the defendant and that pre-exists the alleged defalcation," as opposed to constructive or resulting trusts.  Parker v. Ferland (In re Ferland), 2010 WL 2600588, at *3 (Bankr. M.D. Ga. June 21, 2010) (citation omitted); see also Guerra v. Fernandez-Rocha (In re Fernandez-Rocha), 451 F.3d 813, 816 (11th Cir. 2006).  "Mere friendship does not meet this standard, nor does an ordinary business relationship." In re Ferland, 2010 WL 2600588, at *3 (citation omitted).  Thus, a plaintiff must show that (i) the debtor held a fiduciary position *vis a vis* the plaintiff under a technical, express, or statutory trust; (ii) that the claim arose while the debtor was acting as a fiduciary; and (iii) that the claim is for fraud or defalcation.  Gen. Ret. Sys. of the City of Detroit et al. v. Dixon (In re Dixon), 525 B.R. 827, 845 (Bankr. N.D. Ga. 2015).

Georgia law does not impose a fiduciary relationship or create an express or technical trust between contractors and subcontractors.  See In re Baxter, 294 B.R. 800 (Bankr. M.D. Ga. 2003); see also In re Stone, 1996 WL 34579205 (Bankr. S.D. Ga. Jan. 29, 1996).  If there is no duty created by statute, "additional facts establishing the existence of such an express or technical trust [would be] needed" before a court could impose a fiduciary duty, such as evidence of a trust created by party agreement.  In re Allen, 2013 WL 6199304, at *8 (Bankr. N.D. Ga. Nov. 25, 2013).  Plaintiff has failed to produce any evidence that would indicate that a written

relationship between Plaintiff and Defendant specified the creation of an express or technical trust, or that any written relationship existed between Plaintiff and Defendant at all. Without establishing a technical trust, there is no basis to impose a fiduciary duty on Plaintiff. The absence of a fiduciary duty eliminates the possibility of any debt being nondischargeable as arising from fraud or defalcation while acting in a fiduciary capacity under Section 523(a)(4). Ellis Astin Grading Co. v. Hornyak (In re Hornyak), 2009 WL 6499325 (Bankr. N.D. Ga. Dec. 29, 2009).

For purposes of a Section 523(a)(4) analysis, larceny and embezzlement are defined by federal common law. Allstate Life Insurance Co. v. Guerrerio, 143 B.R. 605 (Bankr. S.D.N.Y. 1992); Ryan v. Reynolds (In re Reynolds), 2006 Bankr. LEXIS 858 (Bankr. N.D. Ga. Apr. 5, 2006). Larceny requires the unlawful taking of another's property, and embezzlement is the appropriation or conversion of another's property where the property was legally in the offending party's possession. American General Finance v. Heath (In re Heath), 114 B.R. 310, 311 (Bankr. N.D. Ga. 1990). Defendant argues Plaintiff has not shown that the filing of the contractor's affidavits supports a claim for either larceny or embezzlement. The burden of proof on Defendant's motion requires Plaintiff to direct the court to evidence supporting its claim, and Plaintiff has failed to do so. Defendant has shown that Defendant did not owe Plaintiff a fiduciary duty, and that Plaintiff has presented no evidence in support of its claim for larceny or embezzlement. Accordingly, summary judgment is warranted in favor of Defendant on Count II of the Complaint.

## **CONCLUSION**

Based on the foregoing, it is hereby

ORDERED that Defendant's motion for summary judgment on Count II is GRANTED;

11

ORDERED that Plaintiff shall file a supplemental motion for summary judgment within 30 days of the date hereof (1) identifying the basis for a claim against the Defendant under state or federal laws other than the Bankruptcy Code; (2) stating the amount thereof and basis of calculation; (3) providing legal citation as to why it is entitled to summary judgment on the claim; and (4) clarifying the extent to which the debt was for money, services, etc. obtained by fraud. Defendant may respond to this supplemental motion for summary judgment within the time period provided by Bankruptcy Local Rules.

### END OF ORDER ###

**DISTRIBUTION LIST**

William L. Kidd
Curtis & Kidd, P.A.
Bldg. 200
3883 Rogers Bridge Road
Duluth, GA 30097

G. Frank Nason, IV
Lamberth, Cifelli, Ellis & Nason, P.A.
Suite W212
1117 Perimeter Center West
Atlanta, GA 30338